## MALONE et al. v. GOODNIGHT–DONALD OIL CORPORATION et al.

### No. 13620.

Court of Civil Appeals of Texas. Fort Worth.

Nov. 19, 1937.

Edwin M. Fulton, of Texarkana, for appellants.

Bromberg, Leftwich, Carrington & Gowan, Burgess, Chrestman & Brundidge, and L. E. Elliott, all of Dallas, for appellees.

BROWN, Justice.

Appellant Mrs. Ruth Malone, joined by her husband, brought suit against W. H. Goodnight, Homer Donald, Goodnight-Donald Oil Corporation, and others not necessary to mention, alleging that in January, 1931, Mrs. Malone entered into an oral contract with W. H. Goodnight and John W. Hooser under which Hooser was to go to East Texas in search of properties on which oil wells might be drilled, and that she was to advance Hooser expense money, and when properties were found, she and Goodnight were to furnish moneys for drilling wells on the properties by sales of interests, "or otherwise," and that the titles should be taken in Hooser's name; that it was agreed that Hooser should hold the titles for himself and in trust for Mrs. Malone

and Goodnight, and that each would own an undivided one-third interest in the properties so acquired; that Hooser procured the leases and Mrs. Malone and Goodnight "sold interests under the contracts to various and sundry purchasers and collected enough money to begin the actual drilling of a well on the Neal land, hereinafter described."

She further alleges that they had trouble with this well and it was necessary to drill a second hole, and that, for the purpose of protecting her interests and that of "her other cotenants," she advanced to Hooser the sum of $5,000 with which the well was completed as a producer.

She further alleged that: "The landowners on both tracts of land (described in the petition and being the lands in controversy) executed oil and gas leases to John W. Hooser and he in turn executed assignments to the other interest holders who had acquired interest in the property, but did not execute to this plaintiff an assignment for her undivided one-third interest." And that she was not reimbursed for her advancements.

She alleged that a suit was filed in the district court of Dallas county by the Fidelity Oil & Royalty Corporation and others against Hooser and others, and that a receiver was appointed for the properties involved, but that the receiver knew that she was the owner of an undivided one-third interest in the Hooser properties; that she was not a party to the suit, and never intervened, and had no knowledge of the facts concerning the suit, or of any orders made by the court in such receivership; and that she is not bound thereby.

She alleged that she advised Goodnight that she was not in accord with the receivership proceedings, and that she intended to file suit to recover her undivided one-third interest and her advancements, and that Goodnight "requested plaintiff not to file suit, because the matter at that time was somewhat complicated, but that if she would desist and refrain from filing her suit at that time, that he would have the hereinafter described property assigned to him by the Receiver and release the Receivership proceedings. And that he would then pay to her five thousand dollars, in cash, and assign to her an undivided one-third interest in and to the oil and gas lease covering the hereinafter described land." She alleged that several months later "the receiver did, by order of this court, assign to the said

Goodnight and the defendant Homer Donald the oil and gas leases on the hereinafter described tracts of land."

She alleged that at all times Goodnight and Donald "recognized that they were indebted to this plaintiff in the sum of Five Thousand Dollars in cash, or two-thirds thereof, and that she was the owner of an undivided one-third interest in and to said oil and gas leases."

She further alleged that shortly before the assignment was made by the receiver to Goodnight and Donald, she entered into an oral agreement with Goodnight, "that if the said Ruth Malone would not intervene in said receivership suit and complicate matters and break up said tentative sale, that as soon as the properties hereinafter described were acquired by the said Goodnight and Donald that they would pay to her two-thirds of the Five Thousand Dollars she had expended, and assign to her an undivided one-third interest in and to said oil and gas lease covering the hereinafter described property, and acting upon said representations, which she believed to be true, she refrained from intervening in the suit mentioned or from filing a suit to recover her interest."

She alleged the consummation of the sale of the properties by the receiver to Goodnight and Donald; the then organization of the Goodnight-Donald Oil Corporation and the assignment of the leases to such corporation; the demand by her, before such transaction, of Goodnight to execute an assignment to her of her undivided one-third interest in the leasehold estate and to pay her two-thirds of the sum advanced by her; and the admission by Goodnight of her rights; his statement that he could not comply with her request until after the receivership proceedings were terminated. That she was thus lulled into a sense of security and she refrained from sooner acting.

She alleged that the assignee corporation had full knowledge of her claims and rights, and same was not therefore an innocent purchaser, for value and without notice.

She prayed "for the title and possession of an undivided one-third interest in said oil and gas leases covering said lands," and a money judgment "against the defendants Goodnight, Donald and Goodnight-Donald Oil Corporation in the sum of $3,333.33 for money advanced by plaintiff in the drilling of said well."

When the cause was tried all counts and claims were abandoned except for the recovery of an undivided one-third interest in the leasehold estate in question.

Proper pleadings were filed by the defendants in response to appellants' asserted claims.

When all evidence was taken, the trial court gave the defendants a peremptory instruction and the jury, on such, found for the defendants. Mrs. Malone and husband appealed from the judgment rendered on such verdict to the Court of Civil Appeals at Dallas, and the cause was transferred to this court for review.

Mrs. Malone and her witness John W. Hooser, both testified that the oral agreement she first had was to the effect that Mrs. Malone, and Hooser and Goodnight were all to own, share and share alike, whatever remained after the lease and wells were financed from sales of interests, and otherwise; and that a large number of interest holders were given assignments of fractional interests through sales made by Goodnight and Mrs. Malone.

The properties were thrown into the hands of a receiver because of the many outstanding debts contracted by Hooser, not only on the three tracts involved in this suit, but on other tracts and properties standing in Hooser's name.

The record shows without dispute that a certain trade-out was made between several parties, so that the three tracts here involved could be transferred to Goodnight and Donald, to be held by them because of the proven personal interests each had in these tracts, by reason of actual assignments made to them by Hooser, when he held the titles, and that said tracts should be held in trust for the many interest holders, to whom Hooser had made assignments on sales made by Mrs. Malone and Goodnight to raise money with which to drill wells on the lands. That all these interest holders agreed to such transaction and executed all conveyances necessary to vest the title in Goodnight and Donald. That the aforementioned corporation was organized with the consent of such interest owners and holders, and that since the corporation took title it had issued capital stock to these many interest holders, including Goodnight and Donald, according to the proportion of interest held by each in the leases.

As we view this case, we deem it unnecessary to discuss several features raised by the briefs and are content to decide same on the following theory:

■ Assuredly, appellants, by reason of the receivership proceedings, the many interests outstanding, and the debts involved in the receivership, cannot be heard to urge that a trust was created by the first oral agreement which they may here enforce.

There was no proof made showing what was left, if anything, to divide three ways, after all debts and expenses were paid, and all interests theretofore sold to other persons were accounted for and ascertained.

This brings us to the alleged oral agreement Mrs. Malone claims she had with Goodnight as to what he and Donald would do concerning Mrs. Malone's claims, if and when a trade could be made with the receiver.

■ The agreement which was had with Hooser and a number of interest holders and Goodnight and Donald, and joined in by the receiver, with the consent of the trial court, shows that five tracts of land were involved, and that the first and second described tracts are not sued for herein by Mrs. Malone.

This contract discloses that Donald owned a three-eighths interest in the first tract and Goodnight a one-eighth interest therein; and R. J. Gamble and Donald and one T. P. Rollandin each owned a one sixty-fourth interest in the second tract, and that they agreed to convey to Hooser and his estate all such interests owned in these two tracts, and Hooser and his estate agreed to convey all of his interest in the third, fourth, and fifth tracts (being those in controversy here) to Goodnight and Donald. Disposition was made in the agreement as to the proceeds of certain oil runs.

The contract further provides that these parties of the first part—Goodnight, Donald, Gamble, and Rollandin—shall not only execute for themselves, but shall procure from all other interest holders having interests in the leasehold estate on the third, fourth, and fifth tracts, a release from all claims, demands, and causes of action that they have against Hooser, his estate, and the receiver.

The record discloses an instrument purporting to be a release signed by some forty-five such interest holders.

No evidence was introduced to show that Donald made any such contract or agreement with Mrs. Malone as she alleges is the basis of her suit. In fact, she only alleges that Goodnight made the statements, promises, and representations on which she relies.

None of the other parties at interest has been charged by pleading or proof with having made any such agreement with Mrs. Malone, or with having consented thereto.

When the testimony of Mrs. Malone touching her last conversations with Goodnight—had while the receivership was pending—is analyzed, it amounts to this: For Mrs. Malone to refrain from filing any suit or claim; that Goodnight was about to make a trade with Hooser and the receiver; that "in a few days they would have it out (the properties out from under the receivership) and he and Dr. Donald and myself would share just alike; Mr. Hooser and he and I would have—would have a third above what the interest holders have."

She testified at another time, speaking of Goodnight: "He said they were going to pay me back two-thirds of the $5000.00. * * * I would own a third and he a third and Dr. Donald a third."

Giving what we believe to be a liberal construction to the pleading and evidence, we do not think a trust has been shown to exist.

■ Even if the record before us can be said to be sufficient to raise an issue of whether or not a trust was brought into being, nevertheless the giving of the peremptory instruction by the trial court was correct, because the evidence produced by Mrs. Malone shows conclusively that she could not, under any view taken, be entitled to an one-third interest in the leasehold estates, and not having made proof of all the interests involved and of the particular portion, or fractional part, out of which she could have carved her one-third interest, she wholly failed to make out even a prima facie case.

For the reasons given, the judgment of the trial court is affirmed.